USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 3-6-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HYMAN BRODT,

Plaintiff,

-against-

CITY OF NEW YORK, DEPARTMENT OF INFORMATION TECHNOLOGY & TELECOMMUNICATIONS, LEE DICKE and MICHAEL BIMONTE, individually,

Defendants.
-----------------------------------------------------------x

13 Civ. 3272 (PKC)

MEMORANDUM AND ORDER

CASTEL, U.S.D.J.

Plaintiff Hyman Brodt, who represents himself pro se, brings thirteen claims of religious discrimination and retaliation against the City of New York (the "City"), its Department of Information Technology & Telecommunications (the "IT Department") and two individual defendants, Lee Dicke and Michael Bimonte.

Brodt alleges that he was terminated and denied promotions under the pretext of budget limitations, when, in reality, the defendants discriminated against him on the basis of his Jewish faith. Plaintiff brings claims of retaliation and religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the New York State Human Rights Law, N.Y. McKinney's Executive Law § 296, and the New York City Human Rights Law, New York City Administrative Code § 8-107. Plaintiff also asserts that the defendants violated the protection of free exercise of religion enshrined in the First Amendment to the U.S. Constitution and Article I of the New York Constitution, and equal protection under the law guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 11 of the New York Constitution.

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the reasons explained below, the Complaint fails to state a federal claim against the defendants. First, the IT Department is not an entity capable of being sued, and Brodt has agreed to voluntarily withdraw all claims against it. Second, Title VII does not permit Brodt's claims against two individual supervisors, Lee Dicke and Michael Bimonte. Third, the Complaint fails to state claims of discrimination or retaliation under Title VII against the City or any other defendant, and does not plausibly allege violations of the United States Constitution. The Complaint therefore fails to state a federal claim for relief. The Court declines to exercise supplemental jurisdiction over Brodt's remaining claims brought under New York law.

BACKGROUND

In reviewing the Complaint, the Court accepts all non-conclusory factual allegations as true, and draws every reasonable inference in favor of the plaintiff as the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

In February 1999, the IT Department hired Brodt as a computer specialist. (Compl't ¶ 28.) He passed a civil service exam for the computer specialist position in March 2001. (Compl't ¶ 29.) In May 2003, the IT Department terminated him from the computer specialist position. (Compl't ¶ 30.) Brodt was told that his termination was due to budget cuts, but, believing that this explanation was a pretext for discrimination, on May 23, 2003, he filed "an internal EEO complaint of an unlawful employment discrimination against [the IT Department]." (Compl't ¶¶ 30-31.) On July 3, 2003, he withdrew the complaint after accepting a new IT Department position as associate staff analyst. (Compl't ¶ 32.) The associate staff analyst position did not have permanent employee status, which could be earned by passing a civil service exam. (Compl't ¶¶ 33-34.)

In June 2004, Brodt took a civil service exam for the staff analyst position. (Compl't ¶ 33.) Brodt states that from June 2007 to January 2009, he repeatedly applied for a position that would grant him permanent status as a staff analyst, but that the IT Department informed him that it was "not picking anybody off the list at that time." (Compl't ¶ 34.) Plaintiff claims that "[t]his was not true as others on the list were picked up (i.e., hired)." (Compl't ¶ 34.) He asserts that defendant Bimonte, whom the Complaint identifies as a deputy commissioner in the IT Department, had authority to make hiring decisions. (Compl't ¶ 34.)

Defendant Dicke became the Brodt's immediate supervisor in October 2010. (Compl't ¶ 35.) The two had "worked closely" together since 2003, but Dicke did not previously have a supervisory role as to Brodt. (Compl't ¶ 35.) According to Brodt, during the course of his association with Dicke, Dicke made derogatory statements about Brodt's religious faith. (Compl't ¶ 36.) Specifically, Brodt alleges that Dicke "constantly mocked" him "for having 9 children," and that when Brodt went to daily prayer service, Dicke "made derisive comments saying that he should not forget to pray for him also." (Compl't ¶ 37.) According to the Complaint, "What was most annoying was Mr. Dicke's constant touching and rubbing of Mr. Brodt's yarmulke." (Compl't ¶ 38.) Brodt states that he did not complain about Dicke's conduct at the time because Dicke "promised that he would use his influence" with defendant Bimonte to get Brodt a permanent position. (Compl't ¶ 38.)

Brodt states that beginning in June 2009, he took the first in a series of five additional civil service exams in hopes of being hired for a permanent position. (Compl't ¶ 39.) In November 2012, the IT Department was notified that Brodt had passed relevant exams and was eligible for a permanent position. (Compl't ¶ 40.) The Complaint alleges that Brodt still was not hired permanently. (Compl't ¶ 40.)

According to the Complaint, in January 2012, Brodt received his first negative performance review, which was delivered by Dicke. (Compl't ¶ 41.) Brodt also was told that, due to budget cuts, he would be terminated in April 2012. (Compl't ¶ 42.)

As described in the Complaint, "[o]n January 24, 2012, Mr. Brodt filed an internal EEO complaint against Mr. Dicke for religious discrimination and religious harassment." (Compl't ¶ 43.) In March 2012, the "EEO concluded that Mr. Dick should attend [the IT Department's] Sexual Harassment Prevention Training for Managers and should be counseled about personal space and workplace comments." (Compl't ¶ 44.) Brodt was terminated on April 17, 2012. (Compl't ¶ 45.)

On or about May 23, 2012, Brodt filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (Compl't ¶ 4.) According to the Complaint, on July 12, 2012, the EEOC referred the matter to the New York State Division of Human Rights (the "NYSDHR") for review. (Compl't ¶ 5.) Separately, on May 30, 2012, Brodt filed a charge of discrimination with the NYSDHR. (Rowntree Dec. Ex. B.) In a written decision of November 20, 2012, the NYSDHR concluded that there was no probable cause to believe that the IT Department engaged in unlawful discrimination. (Rowntree Dec. Ex. D.) According to the Complaint, on February 22, 2013, the United States Department of Justice issued a right to sue letter. (Compl't ¶ 6.) Separately, the defendants have submitted a Decision and Order from an Article 78 proceeding that Brodt commenced in the New York Supreme Court, Kings County, which dismissed Brodt's claim that the IT Department unlawfully terminated him and refused to employ him in a permanent staff position in violation of Section 61 of the New York Civil Service Law. See Brodt v. New York City Dep't of Info. & Telecomms., Index No. 4658/2012; Rowntree Dec. Ex. C.

The Complaint asserts thirteen separate counts of religious discrimination. Counts one ("Employment Discrimination"), four ("Unlawful Discrimination"), five ("Disparate Treatment"), six ("Disparate Impact"), seven ("Retaliation") and thirteen ("Discriminatory Discharge") allege violations of Title VII, along with claims brought under New York law. Plaintiff alleges that he was unlawfully terminated "based on his religion and religious appearance" and discriminated against based on "his status as "an observant JEW." (Compl't ¶¶ 60, 71.) Counts eleven and twelve assert violations of the First Amendment and Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

RULE 12(b)(6) STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and quotation marks omitted). Courts continue to afford special solicitude to pro se complaints after Iqbal and Twombly. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Plaintiffs' pro se pleadings "must be read liberally and should be interpreted 'to raise the

strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

DISCUSSION

I. The IT Department Is Not a Suable Entity and All Claims Against It Are Dismissed.

Section 396 of the New York City Charter requires claims against the City's agencies to be brought against the City itself, and not against its agencies. Section 396 states in full:

> All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.

This provision has been repeatedly been applied to require claims to be brought against the City, as opposed to its departments and agencies. See, e.g., Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008) ("Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("the NYPD is a non-suable agency of the City."); Funt v. Human Resources Admin. of the City of New York, 68 A.D.3d 490, 490 (1st Dep't 2009) (under Section 396, the City's Human Resources Administration is a non-suable entity).

In his opposition memo, Brodt states that, in light of Section 396, he voluntarily withdraws all claims against the IT Department. (Docket # 26 at 5.) Brodt's claims against the IT Department are therefore dismissed.

II. Plaintiff's Title VII Claims against Dicke and Bimonte Are Dismissed.

Title VII does not provide for personal liability on the part of an employer's agents, and permits claims only against the employer itself. See, e.g., Spiegel v. Schulman, 604 F.3d 72, 79 (2d Cir. 2010); Tomka v. Seiler Corp., 66 F.3d 1295, 1313-14 (2d Cir. 1995), abrogated on other grounds, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998). The Complaint therefore fails plausibly allege Title VII claims against defendants Dicke and Bimonte, and all Title VII claims against them are dismissed.

III. The Complaint Does Not Plausibly Allege a Title VII Violation against the City or Any Other Defendant.

A. The Complaint Fails to Allege Discrimination on the Basis of Religion.

1. The Conduct Attributed to Dicke Fails to Allege Discriminatory Animus.

An employee bringing a Title VII discrimination claim need not allege facts that make out a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), but the complaint must nevertheless set forth allegations that support a plausible claim of discrimination. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); see also Hedges v. Town of Madison, 456 Fed. Appx. 22, 23 (2d Cir. 2012) (summary order) (describing post-Iqbal pleading standards in Title VII actions as "somewhat of an open question" in the Second Circuit, but observing that, "at a minimum, employment discrimination claims must meet the standard of pleading set forth in Twombly and Iqbal, even if pleading a prima facie case is not required."). Under Iqbal, a claim of intentional discrimination must include "factual content" sufficient "to 'nudg[e]'" a "claim of purposeful discrimination 'across the line from conceivable to plausible.'" 556 U.S. at 683 (quoting Twombly, 550 U.S. at 570).

In reviewing the sufficiency of a complaint's allegations, a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999) (alterations and quotation marks omitted); see also Williams v. Wellness Medical Care, P.C., 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013) (Karas, J.) ("without sufficient facts, even the most sincerely held beliefs [of discrimination] do not comprise a sufficient basis for withstanding a 12(b)(6) attack."). A complaint "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of . . . discriminatory intent." Corbett v. City of New York, 2013 WL 5366397, at *21 (E.D.N.Y. Sept. 24, 2013) (Amon, C.J.).

In this instance, the Complaint does not set forth allegations sufficient to allege that Brodt was discharged or denied permanent position based on discriminatory animus. In plaintiff's 114-paragraph, 22-page complaint, only two paragraphs discuss conduct that was alleged to reflect discriminatory motivation. (Compl't ¶¶ 37-38.) They do not include facts that plausibly allege discriminatory animus. Plaintiff himself characterizes the conduct as merely "annoying," and adds that he never complained about Dicke's behavior because Dicke "promised that he would use his influence" with Bimonte to secure Brodt a permanent position. (Compl't ¶ 38.)

Dicke's remarks that Brodt "should not forget to pray for [Dicke] also" are self-deprecating toward Dicke himself and do not evince hostility toward Brodt's religion. (Compl't ¶ 37.) Although it was a comment that referenced a religious practice and Brodt's devotion to that practice, it is devoid of a negative implication. Reading an element of animus to such a comment would chill the workplace, and make virtually any comment on the subject of prayer or religious practice unlawful.

Similarly, although they may have made Brodt uncomfortable, Dicke's remarks concerning Brodt's nine children do not reflect negatively on Brodt's religious practices or beliefs. (Compl't ¶ 37.) Dicke's comments, rude though they may have been, focused on the apparently accurate fact that Brodt has nine children. The Complaint does not allege that discriminatory terms were used to link Brodt's religion with the size of his family. Without more, Brodt's claim that "Mr. Dicke constantly mocked Mr. Brodt for having 9 children" (Compl't ¶ 37) does not raise an inference of discrimination.

Brodt's allegation that Dicke was "constant[ly] touching and rubbing" Brodt's yarmulke potentially stands on a different footing because Dicke's actions were both derisive and directed to an object associated with Brodt's religion. (Compl't ¶ 38.) The Complaint does not allege any other details as to these occurrences, including whether they were accompanied by discriminatory comments, and Brodt himself characterizes this conduct as merely "annoying." (Compl't ¶ 38.) However, conduct that is merely "rude and derogatory" does not necessarily state a claim under Title VII, which is not a "'general civility code.'" Bickerstaff, 196 F.3d at 452 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)); cf. Tessler v. KHOW Radio, Inc., 1997 WL 458489, at *8 (D. Colo. Apr. 21, 1997) (comments that mocked plaintiff's yarmulke as a "beanie" were insufficient to support a hostile work environment claim); Cohen v. Austin, 901 F. Supp. 945, 950 (E.D. Pa. 1995) (concluding after a bench trial that a description of plaintiff's yarmulke as a "beanie" "merely reflect a certain insensitivity" and not discriminatory animus). Brodt may have found Dicke's behavior upsetting and uncomfortable.

Taken in their totality, Brodt has not alleged discriminatory motivation in defendants' failure to offer a permanent position or his later discharge. Courts in this District

have dismissed claims when a plaintiff's allegations of discriminatory motive reflected an uncomfortable workplace environment, as opposed to discriminatory animus. See, e.g., Humphries v. City University of New York, 2013 WL 6196561, at *9 (S.D.N.Y. Nov. 26, 2013) (Engelmayer, J.) (a supervisor's utterance of "critical but facially non-discriminatory terms" does not, without more, plausibly allege animus); Edwards v. New York State Unified Court System, 2012 WL 6101984 (S.D.N.Y. Nov. 20, 2012) (Pauley, J.) (allegation that supervisors "yelled at" plaintiff and "displayed [her] as a personal black joke in front of the staff" did not allege discrimination); Ortiz v. Standard & Poor's, 2011 WL 4056901, at *4 (S.D.N.Y. Aug. 29, 2011) (Buchwald, J.) (supervisor statement that "she wants 'the old Doug who laughs back'" was not plausibly discriminatory). Courts also dismiss religious discrimination claims when the allegations are too vague to plausibly allege animus. Harris v. NYU Langone Medical Center, 2013 WL 3487032, at *15 n.19 (S.D.N.Y. July 9, 2013) (Cott, M.J.) (assertion that plaintiff "spoke a prayer at work in the presence of her supervisor . . . resulting in inhumane discipline and discharge" was insufficient to allege religious discrimination); Munoz-Nagel v. Guess, Inc., 2013 WL 1809772, at *6 (S.D.N.Y. Apr. 20, 2013) (Ramos, J.) (allegation that plaintiff suffered religious discrimination because "she was not available to work on Sundays" did not raise inference of discrimination).

Brodt's allegations, taken as a whole, do not "nudge" his "claim of purposeful discrimination 'across the line from conceivable to plausible.'" Iqbal, 556 U.S. at 683 (quoting Twombly, 550 U.S. at 570). His Title VII discrimination claims are therefore dismissed.

2. The Complaint Fails to State a Failure-to-Promote Claim.

Brodt separately has failed to allege circumstances that raise an inference of discrimination specific to his failure-to-promote claims. A failure-to-promote claim may be

supported by evidence that, despite an employee's qualifications, he or she is passed over for promotion while the employer continues to seek applicants for the open position. See generally Aulicino v. New York City Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009). A plaintiff still must plausibly allege that he "was rejected under circumstances which give rise to an inference of unlawful discrimination." Id. (quotation marks omitted).

For the reasons explained, the Complaint does not plausibly allege that Dicke's conduct was motivated by discriminatory animus. Even if it did, the Complaint does not allege that Dicke had direct authority over hiring decisions, and instead alleges that Bimonte had hiring authority. (Compl't ¶ 18.) The Complaint does not attribute any discriminatory utterance, behavior or motivation to Bimonte.

In a failure-to-promote claim, an inference of discrimination also may be raised when a plaintiff plausibly alleges that similarly situated employees outside of plaintiff's protected class received more favorable treatment. See generally Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95-96 (2d Cir. 1999). To support such an inference, a complaint "must compare" the plaintiff to employees who are "similarly situated in all material respects." Id. at 95 (quotation marks omitted). While the religion of a colleague may be less readily discernible than other classifications recognized under Title VII, the Complaint makes no effort to allege whether employees granted permanent staff analyst positions were similarly situated to Brodt or whether they also practiced the Jewish religion. Because the Complaint makes no allegations as to whether Brodt was treated differently than similarly situated employees, it fails to raise an inference of discrimination as to any failure-to-promote claim.

B. The Complaint Does Not Plausibly Allege a Hostile Work Environment Claim Under Title VII.

To state a claim that a plaintiff was subjected to a hostile work environment, a complaint must plausibly allege a workplace setting "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004).

For the reasons largely explained, the Complaint does not allege workplace behavior that plausibly amounts to a hostile work environment. The Complaint alleges that "[d]uring the entire period of Mr. Brodt's association with Mr. Dicke he was subject to religious harassment and was in a hostile work environment." (Compl't ¶ 36.) This allegation, standing alone, is a legal conclusion not afforded the presumption of truth under Twombly and Iqbal. As evidence of the hostile work environment, the Complaint cites only Dicke's comments concerning plaintiff's nine children, Dicke's request that plaintiff pray for him and Dicke's "constant touching and rubbing" of Brodt yarmulke. (Compl't ¶¶ 37-38.) In his own words, Brodt alleges that Dicke's conduct was "annoying," and says that the conduct resulted in "humiliation, embarrassment, [and] emotional distress." (Compl't ¶¶ 38, 62.)

Accepting the truth of Brodt's allegations and drawing every reasonable inference in his behavior, the Complaint alleges the type of "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct" that do not give rise to an actionable hostile work environment claim. Petrosino, 385 F.3d at 223. Brodt's hostile work environment claims are therefore dismissed.

C. The Complaint Fails to Allege Retaliation under Title VII.

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. §2000e-3(a). A plaintiff makes out a prima facie case of retaliation in a Title VII case by coming forward with evidence of "1) 'participation in a protected activity'; 2) the defendant's knowledge of the protected activity; 3) 'an adverse employment action'; and 4) 'a causal connection between the protected activity and the adverse employment action.'" Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)). As with a discrimination claim, a plaintiff alleging retaliation under Title VII does not need to make out a prima facie case in order to survive a motion to dismiss under Rule 12(b)(6). See Williams v. N.Y. Housing Auth., 458 F.3d 67, 71 (2d Cir. 2006). A plaintiff "must nonetheless allege facts that state a plausible retaliation claim." McAllister v. Metro. Transit Auth., 2013 WL 4519795, at *7 (E.D.N.Y. Aug. 26, 2013) (Gleeson, J.) (quotation marks omitted).

The Complaint fails to plausibly allege any nexus between protected activity and the adverse employment action. Brodt asserts that he suffered retaliation for "making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, including the EEO." (Compl't ¶ 76.) He asserts that his termination arose "[a]s a proximate result of" his claims of religious discrimination. (Compl't ¶ 78.)

The first incident of protected activity identified in the Complaint is an internal discrimination complaint that Brodt filed on May 23, 2003. (Compl't ¶ 31.) On July 3, 2003, while his complaint was pending, Brodt was offered a position of associate staff analyst, after which he withdrew the complaint. (Compl't ¶ 32.) The earliest that Brodt alleges to have

suffered retaliation for this complaint is sometime after June 2007 – more than four years later – when he unsuccessfully began to apply for a permanent position as staff analyst. (Compl't ¶ 34.)

The four-year gap between Brodt's May 2003 discrimination complaint and the alleged acts of retaliation does not plausibly allege Title VII retaliation. The Second Circuit has observed in a summary order that an eighteen-month gap is "too temporally removed to support the inference" of retaliation. Woodworth v. Shinseki, 447 Fed. Appx. 255, 258 (2d Cir. 2011) (summary order) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 274 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all.")); see also Van Dyke v. Partners of Debevoise Plimpton LLP, 2013 WL 5375542, at *3 (S.D.N.Y. Sept. 24, 2013) (five-year gap between protected activity and alleged retaliation "demonstrates that there can be no plausible connection between them") (Daniels, J.); Jones v. N.Y. City Bd. of Educ., 2012 WL 1116906, at *14 (S.D.N.Y. Apr. 2, 2012) ("District courts in this circuit consistently have found that an intervening period of more than two to three months is insufficient to establish a causal connection through temporal proximity alone.") (Sweet, J.). Plaintiff's claim of retaliation under Title VII is therefore dismissed.

Separately, in his opposition memo, plaintiff argues that his termination was retaliatory and arose at least in part due to "a causal connection between the disciplinary action of Mr. Dicke . . . ." (Opp. Mem. at 12.) According to the Complaint, however, Brodt was told in January 2012 that he would be terminated the following April. (Compl't ¶ 42.) On January 24, he filed an internal complaint against Dicke asserting religious discrimination and harassment. (Compl't ¶ 43.) According to the Complaint, "[i]n March 2012, EEO concluded that Mr. Dicke should attend [the IT Department's] Sexual Harassment Prevention Training for Managers and should be counseled about personal space and workplace comments." (Compl't ¶ 44.) Brodt

was terminated on April 17, 2012. (Compl't ¶ 45.) Assuming that Dicke's sexual harassment training arose out of plaintiff's January complaint – a connection that is not alleged and is not self-evident – Brodt had already been informed of his own pending termination prior to filing his discrimination complaint. Announcement of the adverse employment action predated any protected activity by Brodt. The Complaint therefore does not plausibly allege a causal connection between Brodt's internal complaint of January 24, 2012 and his previously announced termination.

Plaintiff's retaliation claim made pursuant to Title VII is therefore dismissed.

IV. Plaintiff's Section 1983 Claims Are Dismissed.

Brodt asserts that the defendants "acted with wanton and reckless disregard for Plaintiff's civil rights, religious appearance and belief, under the First Amendment . . . ." (Compl't ¶ 101.) He also asserts that he was denied "equal protection of the laws because of his religion, in violation of the Fourteenth Amendment . . . ." (Compl't ¶ 105.)

Constitutional claims alleging religious discrimination brought under section 1983 are evaluated under the same standard as Title VII claims. See generally Sorlucco v. N.Y. City Police Dep't, 888 F.2d 4, 7 (2d Cir. 1989); see also Chick v. County of Suffolk, __ Fed. Appx. __, 2013 WL 6332682, at *1 (2d Cir. Dec. 6, 2013) (summary order) (applying Title VII standard to section 1983 claim at Rule 12(b)(6) stage). For the reasons explained as to plaintiff's Title VII claims, his section 1983 claims also fails to allege religious discrimination in violation of the First Amendment's free exercise clause or the Fourteenth Amendment's equal protection clause.[1]

[1] While the Complaint does not cite 42 U.S.C. § 1981, to the extent that constitutional employment discrimination claims are frequently brought under section 1981, the Complaint would fail to state a claim for the same reason. See, e.g., Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) ("The substantive standards applicable to

V. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's Remaining State-Law Claims.

Brodt's remaining claims are brought under the New York State Human Rights Law, the New York City Human Rights Law and the New York Constitution. Brodt, who identifies himself as a resident of Brooklyn, does not invoke complete diversity of citizenship as a basis for federal subject matter jurisdiction. (Compl't ¶¶ 7, 10.)

The Court declines to exercise supplemental jurisdiction over plaintiff's remaining claims under New York law. Section 1367 of title 28 of the United States Code governs the exercise of supplemental jurisdiction and states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Section 1367(c)(3) states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." Although section 1367(c)(3) is couched in permissive terms, the Second Circuit has made clear that the Court's discretion "is not boundless." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity – the 'Cohill factors.'" Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in

---

claims of employment discrimination under Title VII . . . are also generally applicable to claims of employment discrimination brought under § 1981 [and] the Equal Protection Clause . . . .").

which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n.7.

Here, plaintiff's federal claims have been dismissed and none of the Cohill factors supports the exercise of supplemental jurisdiction over plaintiffs remaining claims. Those remaining claims solely implicate New York state laws concerning religious discrimination. All parties appear to be located in New York City, and the interests of convenience, fairness and comity do not weigh in favor of retaining supplemental jurisdiction. At this early stage of the litigation, there would be little to no judicial economy in retaining jurisdiction. I therefore decline to exercise supplemental jurisdiction over plaintiff's state-law claims.

CONCLUSION

The defendants' motion to dismiss plaintiff's federal claims is GRANTED. The Clerk is directed to terminate the motion. (Docket # 16.)

Counsel for defendants is hereby ordered to provide copies of all unpublished authorities cited herein to the plaintiff.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
March 6, 2014